# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy No. 07-21800JAD |
| ROACH AUTOMOTIVE, L.P. ) | Chapter 11 |
| d/b/a West Pointe Chrysler Dodge, ) | |
| ) | Related to Document No. 9 |
| Debtor. ) | |
| ─────────────────────── X | |
| ) | |
| ROACH AUTOMOTIVE, L.P. ) | |
| d/b/a/ West Pointe Chrysler Dodge, ) | |
| ) | |
| Movant. ) | |
| ) | |
| - v- ) | |
| ) | |
| DAIMLER CHRYSLER FINANCIAL SERVICES ) | |
| AMERICAS, LLC and BUSINESS LOAN ) | |
| EXPRESS. ) | |
| ) | |
| Respondents. ) | |
| ─────────────────────── X | |

**MEMORANDUM ORDER DENYING THE DEBTOR'S MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. SECTIONS 105 AND 363(C) AND BANKRUPTCY RULES 2002, 4001 AND 9014**

AND NOW, this 2nd day of April, 2007, and after consideration of the pleadings, the evidence of record, and the arguments of counsel, the Court hereby FINDS, ORDERS, ADJUDGES and DECREES that the Debtor's Motion for Interim Order Authorizing Use of Cash Collateral (the "Motion") is DENIED without prejudice.

Because the denial of use of cash collateral has a dramatic impact on the Debtor's continued operations, the Court has deliberated extensively regarding the merits of the Motion and feels compelled to set forth the reasons for its decision.

00000806.WPD

The relief sought by the Debtor's Motion is two-fold. First, the Debtor's Motion seeks to compel Daimler Chrysler Services, Americas, LLC ("Chrysler Financial") to continue to extend credit to the Debtor so that the Debtor can continue to replenish its inventory consisting of new cars, used cars, and parts. However, Chrysler Financial ceased extending credit to the Debtor prior to the commencement of this case and the Court is unaware of any legal authority by which it could compel Chrysler Financial to become an involuntary lender to the debtor-in-possession. Indeed, authority under the Bankruptcy Code appears to be otherwise.

For example, 11 U.S.C.§ 363(b) provides that the debtor may sell, use or lease "property of the estate." Funds that a lender owns is not "property of the estate." Another provision of the Bankruptcy Code, 11 U.S.C. § 364, appears to not be helpful as this section applies only to voluntary extensions of credit, and nothing in the statute provides otherwise. Furthermore 11 U.S.C. §365(c)(2) unequivocally states that financial accommodation contracts are not assumable over the objection of the non-debtor party. Under these circumstances, the Court is unable to grant the Debtor's motion insofar as it seeks to compel Chrysler Financial to extend new financing.

In terms of use of cash collateral, the Debtor has identified two sources of cash collateral which it would like to use pending a final hearing on the Debtor's Motion. These two sources consist of: (a) a pre-petition bank account consisting of approximately $115,000 which represents proceeds of the sales of inventory (the "Bank Account"); and (b) any proceeds of pre-bankruptcy inventory which the debtor might sell post-petition in the ordinary course. While the Debtor produced a budget at the interim hearing on the Motion, the Debtor has not articulated specifically what <u>necessary</u> expenses it would like to pay in order to avoid irreparable harm pending a final

hearing on the Motion (with the exception of payroll in the approximate amount of $47,000[1] and sums in the approximate amount of $68,000 due to clear title to vehicles previously acquired by the Debtor via trade-in with customers). The Court will therefore assume for purposes of this Order that the Debtor's preliminary use request is for sums sufficient to only fund payroll and accrued trade-ins.

The two lien creditors holding liens and/or interests on or against the cash collateral are Chrysler Financial, who is owed in excess of $1.9 million, and Business Loan Center, LLC d/b/a Business Loan Express ("Business Loans"), who is owed in excess of $1 million. Allegedly, Chrysler Financial holds a first lien against the following assets of the Debtor: new vehicle inventory, used vehicle inventory, accounts receivable, and factory rebates. Chrysler Financial allegedly holds a second lien against the Debtor's machinery and equipment, while Business Loans allegedly holds the first lien against machinery and equipment. Business Loans also allegedly holds a junior lien as to all other remaining assets of the Debtor. The Debtor's obligations to Business Loans also are allegedly secured by various assets of affiliates of the Debtor, including the personal residence and farm owned by the Debtor's principal and the building out of which the Debtor's dealership is operated (and owned by an entity known as Dave Roach Realty, L.P).

As consideration for the Debtor's continued use of cash collateral, the Debtor proposes to provide Chrysler Financial monthly payments in the amount of $17,000 and a replacement lien against all pre-petition and post-petition assets of the Debtor, with the exception of avoidance actions. With respect to the replacement lien offered to Chrysler Financial, the Debtor proposes that

---

[1] The Debtor would like to use some of the alleged cash collateral to pay pre-petition wages of the employees. However, the Debtor has not filed a motion to that effect, and none of the estate's creditor body has had notice or opportunity for hearing with respect to the Debtor's request to pay pre-petition claims.

the replacement lien "prime" Business Loans' pre-petition lien against machinery and equipment. The Debtor suggests that the priming nature of the replacement lien is appropriate in the name of "equity" due to the fact that the Debtor's obligations to Business Loans is secured by the assets of various non-debtor parties. With the exception of the continued remittance of monthly mortgage payments in the amount of $12,661.58, the Debtor's Motion does not contemplate any consideration or further adequate protection in favor of Business Loans.

On lack of adequate protection grounds, Chrysler Financial and Business Loans has objected to the relief requested by the Debtor's Motion. Chrysler Financial also objects to the Debtor's Motion contending that the Bank Account constitutes Chrysler's property and is not "cash collateral" which the Debtor may use. Business Loans has also objected to the priming nature of any lien the Debtor proposes to grant to Chrysler Financial claiming that subordination of Business Loans' position is unlawful.

With respect to the replacement lien offered to Chrysler Financial, the Court can discern no legal basis on which the Debtor can offer a "priming lien." Such a creature is not created in Section 363 of the Bankruptcy Code, but rather it exists in Section 364(d) of the Code. See 11 U.S.C.§ 364(d). Because Chrysler Financial is not proposing to fund the Debtor with any new money, it is clear to the Court that Section 364(d) relief is not proper in the circumstances presented by this case.

Because Section 364(d) of the Bankruptcy Code is unavailable, the Debtor submits that general principles of equity jurisprudence supports the Debtor granting a priming replacement lien in favor of Chrysler Financial to the detriment of Business Loans. The equity jurisprudence cited by the Debtor includes the doctrines of equitable subordination and marshaling.

The Court is not in a position to grant such broad sweeping relief in a summary proceeding

such as this one because the adversary rules plainly provide that equitable relief can only be obtained by way of judgment in an adversary proceeding and not by way of motion practice. See Fed.R.Bankr.P. 7001.

Even if the Court could address the equitable claims of the Debtor by way of motion practice, the Court is not convinced that the Debtor has a strong likelihood of success in any equitable subordination proceeding because no evidence of wrongful (or egregious) conduct on the part of Business Loans was presented at the evidentiary hearing on this matter. See Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims (In re Papercraft Corp.), 160 F.3d 982, 986-987 (3d Cir. 1998)(holding that aggrieved party seeking equitable subordination of creditor's claims must demonstrate that creditor engaged in inequitable conduct).[2]

In addition, and without ruling on the ultimate merits of any marshaling claim, it should also be noted that there is uncertainty in the law as to whether a person other than a secured creditor has standing to pursue marshaling claims in equity. Sowell v. Federal Reserve Bank, 268 U.S. 449, 456-57 (1925)("The equitable doctrine of marshaling rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds. The debtor may not ordinarily invoke the doctrine, for by doing so he would disregard the express provisions of his contract on which the creditor is entitled to rely."); In re Lomb, 74 B.R. 711 (Bankr. W.D. Pa. 1987)(refusing to order creditor to marshal lien against non-debtor assets despite request of chapter 7 trustee); contra In re High Strength Steel, Inc.,

---

[2] The Court does note that it was suggested that non-debtor parties may have been the beneficiary of the loans made by Business Loans. See Note 10, infra. For the same reason the Court declines to adjudicate the Debtor's putative marshaling claim, the Court declines to adjudicate the avoidability of any claim of Business Loans by way of motion practice. The Court therefore reserves judgment on this issue if, and to the extent, it would become relevant.

269 B.R. 560 (Bankr. D. Del. 2001).

In any event, the Court concludes that the Debtor has not made a sufficient evidentiary record so that the Court may make an adjudication with respect to marshaling at this early juncture of this bankruptcy case. This conclusion is particularly acute since the putative secured creditor against whom marshaling would be sought has had less than 48 hours notice of the hearing on the Motion.

With respect to the actual cash collateral that the Debtor contemplates using, the Debtor seeks to have access to the Bank Account containing at least $115,000.[3] The Debtor has not disputed the fact that the proceeds in the Bank Account are customer proceeds to be held "in trust" by the Debtor for the benefit of Chrysler Financial. In connection with these proceedings, the Debtor also did not dispute the fact that the Debtor's Financing Agreement with Chrysler also provided that the Debtor agreed to hold such sale proceeds, in whatever form they may be received, "in trust" for and on behalf of Chrysler Financial, with the Debtor "assuming full fiduciary duties, responsibilities, and obligations to and in favor of" Chrysler Financial.

Given the trust nature of these proceeds, applicable law of this District is that the funds in the Bank Account are not property of the estate and do not constitute "cash collateral" for purposes of the Bankruptcy Code. See e.g. In re Kiesewetter, 337 B.R. 75, 78 (Bankr. W.D. Pa. 2006)(monies debtor held in trust for benefit of third parties are not property to be administered by the bankruptcy estate); see also In re Aultman, 223 B.R. 481, 484 (Bankr. W.D. Pa. 1998)(same). Of course, the

---

[3] Chrysler Financial asserts that the account had at least $120,101.46 on deposit as of March 27, 2007. Nothing contained in this Order should be deemed or construed to be a finding that Chrysler owns the account free and clear of claims of third-parties, such as tax claimants and claims of employees. As to the latter, the Court notes for the record that counsel for Chrysler has indicated that Chrysler has a history of paying dealership employee claims in situations where Chrysler's collateral is liquidated.

preceding analysis assumes that the Bank Account remains titled in the name of the Debtor. However, the undisputed record in this case is that legal title the Bank Account was conveyed to Chrysler Financial just prior to the commencement of this bankruptcy case on March 19, 2007 when Chrysler lodged a Notice of Assignment with National City Bank.[4] This additional fact further undermines the Debtor's efforts to have access to the Bank Account, and the Debtor has not articulated a basis in which the Court could compel Chrysler Financial to release it. Consequently, the Court is left with no choice but to deny the Debtor's request to use the Bank Account proceeds and the Debtor has not pointed the Court to any legal authority by which it could conclude otherwise.

Lastly, by the Motion the Debtor seeks to continue to sell its inventory in the ordinary course and to use any proceeds generated post-petition to pay payroll and related necessary expenses. Nothing in the Bankruptcy Code precludes the Debtor from selling, using or leasing its property, other than cash collateral, in the ordinary course of business. However, because all of the Debtor's assets are tied-up by the liens of Chrysler Financial and Business Loans, the Debtor would like to use the proceeds of sales to fund operations.

Given the objections lodged by Chrysler Financial and Business Loans, the Court can only authorize the Debtor's use of such cash collateral if the Debtor can provide the creditors with "adequate protection" for any loss in value caused by Debtor's use of it. See 11 U.S.C. § 363(e). The burden of proof on the issue of adequate protection falls squarely on the Debtor. See 11 U.S.C.

---

[4] The Debtor has not contended that the assignment of the Bank Account is a preferential transfer. Even if the account is arguably preferential, the Debtor does not dispute that the proceeds in the account constitute Chrysler's collateral. Therefore, it is questionable that Chrysler has improved its priority position as a result of the transfer. The Court reserves judgment on this issue if, and to the extent, it becomes justiciable.

§ 363(e).[5]

The aggregate claims of Chrysler Financial and Business Loans exceed $2.9 million, and the Debtor's assets have a present value ranging from $2 million (as valued by Chrysler Financial) to $2.3 million (as valued by the Debtors). The facts adduced at the preliminary hearing also indicate that various non-Debtor collateral valued at approximately $1.6 million is pledged in favor of Business Loans.[6] Thus, in the matter *sub judice*, it appears that Business Loans is over collateralized and may be adequately protected. Business Loans nonetheless contends that the existence of non-debtor collateral is irrelevant for purposes of determining whether a creditor is adequately protected. The Court disagrees.

The existence of a meaningful equity cushion provides adequate protection to a secured creditor. See In re Snowshoe Co., 789 F.2d 1085 (4th Cir. 1986).[7] The cushion itself is not entitled to protection. In re Delta Resources, Inc., 54 F.3d 722 (11th Cir. 1995); In re Triplett, 87 B.R. 25 (Bankr. W.D. Tex. 1988).

This law notwithstanding, Business Loans asks that the Court take a blind eye regarding its over collateralized position in various non-debtor assets. The Court will not do so. The legislative history to the adequate protection provisions of the Bankruptcy Code expressly refers to guaranties

---

[5] The standard by which the Debtor must beet its burden is that of preponderance of the evidence. In re McCombs Properties VI, Ltd. 88 B.R. 261 (Bankr. C.D. Cal. 1988)

[6] At the preliminary hearing, the principal of the Debtor acknowledged that his principal residence had value of at least $200,000 above his first mortgage, that his farm had value of at least $600,000 above a first-mortgage, and that the value of the real estate and building on which the Debtor's business is situate is at least $800,000 (and possibly as high as $1,000,000). Thus, according to this testimony, the liens and claims of Business Loans attach to at least $1.6 million in collateral, not to mention the fact that the Business Loan claim is secured by a guaranty by the Small Business Administration.

[7] To be clear, the cushion must be meaningful because a slim equity cushion which is eroding rapidly may not constitute adequate protection. In re Liona Corporation, 68 B.R. 761, 768 (Bankr. E.D. Pa. 1987).

as a basis for providing adequate protection. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977) U.S. Code Cong. & Admin. News 1978, p. 5787 ("For example, another form of adequate protection might be the guarantee by the third party outside the judicial process of compensation for any loss incurred in the case."). The Court finds this legislative history to be persuasive and concludes that valuable assets already pledged by third-parties can constitute adequate protection. In re Diaconx Corporation, 69 B.R. 333, 339 (Bankr. E.D. Pa. 1987); In the Matter of Cardell, 88 B.R. 627, 631-32 (Bankr. D. N.J. 1988). Thus, based on the record, the Court concludes that Business Loans is adequately protected. The Court's conclusion is particularly acute in light of the fact that it has previously concluded that no replacement lien in favor of Chrysler Financial may prime any non-avoidable lien already in existence in favor of Business Loans.

With respect to Chrysler Financial, its equity cushion is much smaller than Business Loans. The equity cushion in favor of Chrysler Financial as of the petition date ranged from approximately $75,000 to $375,000, depending upon whose valuations the Court accepts. For purposes of this Opinion, the Court accepts the $75,000 equity cushion value given (a) the prior lien asserted by Business Loans in machinery and equipment, and (b) lower statements of value made by the Debtor's principals in various pre-bankruptcy certifications to Chrysler Financial. This cushion, however, is subject to continued erosion because the Debtor proposes to sell Chrysler's car inventory every day and the Debtor currently has no ability to replace it because the Debtor has no floor-plan financing or other alternative sources of working capital in place. In addition, the Debtor's principal acknowledged on the witness stand that the inventory is depreciating in value every day, and the Debtor's pre-petition certifications to Chrysler reflected that the Debtor's parts

inventory (as pled in the Motion) is overstated significantly.[8] Thus, in order for the Debtor to provide adequate protection to Chrysler, the Debtor must be in a position to offer Chrysler Financial either (a) additional collateral, or (b) offer periodic cash payments in an amount which at least equals the diminution of cash collateral value.

With respect to the former (i.e., additional collateral), the Debtor has no additional assets to pledge to Chrysler Financial.[9] As to the latter, the Debtor has submitted to the Court a budget whereby the Debtor would like to use over $100,000 of Chrysler's cash collateral on a monthly basis and yet only $17,000 of additional sale proceeds would be remitted to Chrysler Financial net of any "floor plan" amounts due Chrysler when vehicles are sold.[10] Of course, the $17,000 to be paid to Chrysler is its collateral regardless of any replacement lien that may be granted in this case. See 11 U.S.C. 552(b).

The Court concludes that the adequate protection proffered by the Debtor in this case to Chrysler Financial is inadequate. During the interim period proposed by the Debtor, remittances of sums due Chrysler on account of floor plan amounts for inventory sold post-petition is a wash at best with respect to the disposition of hard collateral based on liquidation values (and not retail values). In terms of the alleged "profit" on each sale, the Debtor would like to utilize such projected "profits"

---

[8] In February of 2007, the Debtor had certified that its parts inventory was valued at approximately $66,000, but the Debtor's Motion suggests that it is valued at approximately $90,000. The Debtor, however, acknowledged at the evidentiary hearing that Chrysler had placed the Debtor on "credit hold" so the Debtor is not in a position to replenish its parts inventory.

[9] While the Debtor is actively pursuing a source of post-petition financing, the Debtor has no current source of working capital to increase its inventory and the Debtor's principals have refused (or have been unable) to infuse any new money into the Debtor's business. Similar to the fact that the Court cannot compel Chrysler to be an involuntary lender, the Court cannot (in the absence of substantive consolidation) compel non-debtor third-parties to offer additional assets as adequate protection to the Debtor's secured creditors.

[10] Apparently each vehicle in the Debtor's inventory is assigned a "floor plan" value of some sort. The Debtor assumes that each vehicle will be sold at an amount in excess of the floor plan value.

to pay various expenses, some of which may benefit Chrysler Financial and some may not. For example, while Chrysler holds a first lien on all proceeds of car sales, the Debtor would like to use funds received from customers to pay debt service to the Debtor's subordinate lender Business Loans. These sums equal at least $12,661.58 per month. How does the Debtor propose adequately protecting Chrysler Financial for this expenditure?[11] It really offers no protection, except wishful projections of amorphous "profitability," which the Court finds to be lacking any merit even on a preliminary basis.[12]

By way of example, the Debtor's projection of profitability assumes that the Debtor would need to sell approximately 33 vehicles per month, and reduce at least $21,000 per month in overhead in order to have positive cash flow. See Debtor's Exhibit B. However, the Debtor's assumptions appear to be overly generous in that the Debtor "guestimated" an average profit on each of those vehicles at $2,400 per vehicle. At the evidentiary hearing, Chrysler Financial asserted that during the eight month period prior to the commencement of this bankruptcy case,[13] the Debtor reported gross "profit" of approximately $1,800 per new car and $1,500 per used car, and the Debtor neither

---

[11] The Court notes that most, if not all, of the loan proceeds received from Business Loans were received by parties other than the Debtor. Of the $1,060,000 loaned by Business Loans, $720,000 was used by Dave Roach Realty, L.P. to purchase land and improvements on which the Debtor's dealership operates and $310,000 used to fund the acquisition of a business known as Corwin Automotive Group, Inc. As to the latter, the record is unclear as to whether the Corwin business was purchased directly by the Debtors or some other third-party.

[12] The Court does not find the testimony of the Debtor's principal to be credible as it related to proffered adequate protection. The Court reaches this conclusion for various reasons, including the reasons set forth above and because of the following: First, the Debtor's principal testified that he lacks a sufficient understanding of accounting and financial statements. Second, the pre-bankruptcy financial statement certified by the Debtor to Chrysler appears to have several mis-statements. By way of example, the financial statement provided by the Debtor omitted its indebtedness to Business Loans altogether, even though the loan is a significant obligation. Third, the Debtor indisputably sold vehicles out-of-trust, despite promising Chrysler that it would not do so. And fourth, the Debtor's principal during the weeks or months leading up to the Debtor's bankruptcy filing affirmatively misled Chrysler by advising the creditor that the principals had infused $400,000 in capital into the Debtor's business all while the principals actually infused nothing.

[13] See Ex. E, Objection to Debtor's Emergency Motion.

disputed these figures nor offered any cognizable basis on which its "profits" could be demonstrably higher. Using a per vehicle "profit" of $1,800, which is the best case scenario, the Court concludes that the Debtor's projected ongoing losses will equal at least $6,461.58[14] per month even if every single one of the Debtor's aggressive cost savings were successfully implemented. This shortfall does not even include any costs associated with administering this bankruptcy estate, such as professional fees, potential unpaid taxes, and statutory U.S. Trustee fees. Thus, the undisputed evidence presented to the Court at the preliminary hearing on the Debtor's motion is that the financial outlook of the Debtor's financial affairs is bleak.

Given these circumstances, the Court took the Debtor's Motion under advisement over an intervening weekend so that it could review the record and discern whether Chrysler Financial has been provided with any meaningful adequate protection. The Court did so even though it "is the responsibility of the debtor to propose adequate protection [for the affected creditors]; it is not for the court to impose adequate protection." In re Liona Corporation, 68 B.R. at 766 (citing 2 Collier on Bankruptcy ¶ 360.01[2], at 361-8 (15th ed. 1986)). Based on the Court's review and deliberation, the Court could not discern any further adequate protection that it could order under the existing facts of this case. Under these circumstances, the Court has been put in the unenviable position of concluding that the Debtor does not have a reasonable likelihood of prevailing at any final hearing on the Debtor's Motion. See 11 U.S.C. §§ 363(c)(3) and 363(e).

THEREFORE, for the reasons set forth above, the Court hereby ORDERS, ADJUDGES and DECREES, that the Debtor's Motion is DENIED without prejudice. In the event the Debtor is in

---

[14] Using the $1,800 "profit" per vehicle number, the Debtor's projected monthly gross revenues are $94,200 measured against projected gross expenditures of $100,661.58. The Court inserts quotes around the term "profit" as the $1,800 is not "profit" at all.

a position to offer further adequate protection to affected creditors, upon the filing of an appropriate motion on or before April 13, 2007, the Court will hold a final hearing on the Motion on April 27, 2007 at 11:00 A.M., Courtroom D m 54th Floor, US Steel Tower, Pittsburgh, PA l5219. Should such a motion be filed, any responses shall be filed on or before April 20, 2007.

Dated: April 2, 2007                        __/s/ Jeffery A. Deller_____
                                                    Jeffery A. Deller
                                                    United States Bankruptcy Judge

cc: case administrator to serve:
      Donald R. Calairo, Esq.
      F. Matthew Jackson, Esq.
      Jonathan D. Deily, Esq.
      John J. Winter, Esq.
      Joseph M. Fornari, Esq.